UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FLORENCE CAESAR,                    : CIVIL NO: 1:10-CV-00202
                Plaintiff          :
                                   : (Judge Conner)
        v.                         :
                                   : (Magistrate Judge Smyser)
                                   :
PENNSYLVANIA DEPARTMENT OF         :
CORRECTIONS, *Et al.*,             :
                                   :
                Defendants         :


**REPORT AND RECOMMENDATION**


I. Background and Procedural History.

        The plaintiff, a prisoner proceeding *pro se*, commenced
this action by filing a complaint on January 26, 2010.  On May
17, 2010, the plaintiff filed a proper application for leave to
proceed in forma pauperis and an authorization form to have
funds deducted from her prison account to pay the filing fee in
this case.  By an Order dated May 21, 2010, we granted the
plaintiff's application to proceed *in forma pauperis* and
ordered that the plaintiff may file an amended complaint.  On
October 20, 2010, the plaintiff filed an amended complaint.


        The amended complaint names the following as
defendants: 1) Jeffrey Beard, the Secretary of the Pennsylvania
Department of Corrections (DOC); 2) Shirley Moore-Smeal, a

former Superintendent of the State Correctional Institution at Muncy (SCI-Muncy) and currently the Deputy Secretary of the DOC; 3) Dawn Chamberlain, a former Superintendent at SCI-Muncy; 4) Mariosa Lamas, the Superintendent at SCI-Muncy; 5) Troy Edwards, the Superintendent's Assistant and Grievance Coordinator at SCI-Muncy; 6) the DOC; 7) Brian Shiptoski, a certified registered nurse practitioner at SCI-Muncy; 8) Andrew Peters, a psychiatrist at SCI-Muncy; 9) Susan Seybert, the Mental Health Director at SCI-Muncy; 10) Jill Shepler, the current Deputy Superintendent for Centralized Services at SCI-Muncy and a former corrections classification manager at SCI-Muncy; 11) Officer Garrison, a corrections officer at SCI-Muncy; and 12) Howard Woodring, a psychologist at SCI-Muncy. The plaintiff has sued defendants Beard, Moore-Smeal and Shepler in their official capacities only. She has sued defendants Chamberlain, Lamas, Edwards, Shiptoski, Peters, Seybert, Garrison and Woodring in both their official and individual capacities.

The plaintiff alleges the following facts in the amended complaint.

On April 29, 2007, defendant Garrison called the plaintiff to the officer's station and asked her repeatedly if she was alright.  After the plaintiff responded three times that she was fine, defendant Garrison told her to sit in the couch in the common room.

Thereafter, the plaintiff was escorted to the infirmary by other officers.  A sergeant told the plaintiff that defendant Shiptoski wanted to admit her to a psychiatric observation cell.  The plaintiff was admitted to the psychiatric observation cell by defendant Shiptoski who was masquerading as a doctor but who is really only a certified registered nurse practitioner.  Defendant Shiptoski put the plaintiff on Thorazine, Prozac and Respiridol.  Defendant Shiptoski had no authority to commit the plaintiff to the psychiatric observation cell or to prescribe medication for her without a doctor's approval, which he did not have.  Although the plaintiff's medical records contain a notation by defendant Shiptoski indicating that Dr. Calvert approved his actions, Dr. Calvert recently told the plaintiff that she had never prescribed Thorazine or Prozac for her and that she did not

remember admitting her to the psychiatric observation cell on April 29, 2007.

The plaintiff had never before been prescribed Thorazine or Prozac but she had previously been prescribed Respiridol. The medications made the plaintiff unable to stand or to function. The plaintiff was discharged from the psychiatric observation cell on May 2, 2007 but she was put back in the psychiatric observation cell on the same day because she was confused and dizzy from being overmedicated. After the plaintiff was returned to the psychiatric observation cell she was given a smock to wear. The smock was missing a velcro fastener and every time the plaintiff would stand up the smock would fall off of her exposing her body to the staff and the camera. The medications made the plaintiff forgetful and confused, and because of the medications, the plaintiff kept forgetting that the smock was missing its fastener and the smock kept falling off. On one occasion the plaintiff tripped, fell over the bed and cut her leg because the smock had fallen and she was dizzy. The plaintiff decided not to take any more medication.

The plaintiff was unable to write to anyone about her circumstances in the psychiatric observation cell because she was not allowed to have writing materials in the psychiatric observation cell. The plaintiff was also not allowed hygiene materials or legal materials in the psychiatric observation cell.

Defendant Shiptoski repeatedly told the plaintiff that if she did not take her medication she would not get out of the psychiatric observation cell. On May 10, 2007, defendant Shiptoski told the plaintiff that he wanted what was best for her and that she would not get out of the psychiatric observation cell until she started to take the medicine again. Also on May 10, 2007, defendant Seybert and the plaintiff's psychiatrist, Dr. Wood, came to the plaintiff's cell and asked her to take the medication.

On May 11, 2007, defendant Seybert accompanied defendant Shiptoski to the plaintiff's cell. Both defendant Shiptoski and defendant Seybert threatened that if the plaintiff did not take the medication she would never leave the psychiatric observation cell. Defendant Seybert reminded the

plaintiff that she had told her years ago that she would be on medication all of her life. Defendant Seybert said "You'll take this medicine or I'll take steps to commit you." The plaintiff refused to take any medication unless prescribed by Dr. Wood.

On May 14, 2007, defendant Shiptoski came to the plaintiff's cell and said: "You can make your stay here easy or difficult. Take the medicine it is to help you." The plaintiff told defendant Shiptoski that Dr. Wood had taken her off all medication in January of 2007 with the exception of .25 mgs of Respiridol, which Dr. Wood indicated that she did not need but which the plaintiff had indicated she wanted to continue taking. Defendant Shiptoski said he was her doctor now.

On May 16, 2007, defendant Shiptoski came to the plaintiff's cell and asked her if she would be comfortable taking a smaller dose of Respiridol. The plaintiff agreed to take .25 mgs of Respiridol, which is the same amount that she had been taking before being committed to the psychiatric

observation cell.  On May 17, 2007, the plaintiff was released
from the psychiatric observation cell and returned to her unit.

When the plaintiff returned to her unit, she noticed
that all of her legal work, her grievances and a pair of
sneakers were missing from her cell.  The plaintiff is housed
in a single cell which is kept locked when she is not occupying
it.  The plaintiff was told by numerous inmates that defendant
Garrison and Lieutenant Gridley had gone into her cell on May
15th and May 16th and searched her room, desk and trunk.
Lieutenant Gridley was in charge of security in the infirmary
where the psychiatric observation cell is located and he was in
charge of an illegal search about which the plaintiff had
previously filed a grievance.

The plaintiff alleges that defendant Shiptoski
deliberately overmedicated her.  She alleges that the reason
that she was put in the psychiatric observation cell was so

that they[1] could steal all of her legal work and that that is exactly what they[2] did.

The plaintiff filed numerous grievances, and she wrote to every person she believed could help her discover the reason she had been placed in the psychiatric observation cell. After the plaintiff began writing grievances about her stay in the psychiatric observation cell and the theft of her property, defendant Shiptoski was suddenly no longer employed at SCI-Muncy.

The plaintiff saw Dr. Wood after she was released from the psychiatric observation cell. Dr. Wood told the plaintiff that she had written an unfavorable report about the plaintiff but that that was before she had found out the truth. Dr. Wood told the plaintiff that she would go to court with her if the plaintiff decided to go to court. The plaintiff told her psychologist Mrs. Schweikle what Dr. Wood had said and shortly thereafter Dr. Wood was let go.

_____

1. The plaintiff does not indicate who "they" are.

2. *See* Fn. 1.

8

The plaintiff resided in the Honor Cottage at SCI-Muncy.  One of the rules in the Honor Cottage is that if an inmate does not volunteer to work the inmate is removed from the unit.  After the plaintiff had told defendant Moore-Smeal about something that Officer Manning had done, she was not a favorite of Officer Manning.  Officer Manning had been trying to get her removed from the unit.  One day after a call for volunteers, the plaintiff brought in a load of laundry.  Although the plaintiff had brought in the laundry, Officer Manning told another officer to mark the plaintiff's card that she had not volunteered.  The plaintiff was upset.  The plaintiff went to her psychologist, defendant Woodring, and told him that Officer Manning has been harassing her ever since she wrote Officer Manning up.

The plaintiff inquired into who had sent her to the psychiatric observation cell, and she was told by an officer that defendant Garrison did so.  The plaintiff wrote to defendant Garrison a number of times but he never answered.

The plaintiff wrote to defendant Chamberlain requesting information about why she was placed in the psychiatric

observation cell. Defendant Chamberlain responded that staff was concerned about her because she was giving away her property. The plaintiff, however, was not giving away her property and in fact she is known for her stinginess. The plaintiff wrote to defendant Chamberlain and informed her that she had not been giving away her property and that she had given an officer a surplus of t-shirts so that she would not get written up.

On July 13, 2007, defendant Chamberlain and her assistant Patti Stover met with the plaintiff. Defendant Chamberlain told the plaintiff that she had been committed to the psychiatric observation cell by defendant Shiptoski because she had threatened to commit suicide. The plaintiff denied that and asked who had said that she had threatened to commit suicide. Defendant Chamberlain said that the report was not completed and that she did not have that information but she intimated that it may have been an inmate. When the plaintiff was asked during the meeting what she wanted, the plaintiff responded that she wanted Officer Manning fired. Stover said that they could get a separation order sending the plaintiff to Cambridge Springs. The plaintiff said she would fight that.

After the meeting, the plaintiff continued to write to defendant Chamberlain asking her for the completed report.

The plaintiff subsequently asked to be removed from the Honor Cottage because she was being harassed continually.  She had received an "informal" for something trivial and she knew that they[3] were trying to write her up because she would not be satisfied until she got an answer to who had accused her of threatening to commit suicide.

The plaintiff moved to Smith Cottage.  On December 17, 2007, while illegally smoking in her room in Smith Cottage, the plaintiff heard an officer coming.  The plaintiff put her cigarette in a book and closed the book in an attempt to avoid being caught smoking.  The book, however, caught fire.  Instead of being written up and taken to the Restricted Housing Unit (RHU), the plaintiff was taken to the psychiatric observation cell.  The plaintiff knew that they[4] were going to steal her

---

3.  *See* Fn. 1.

4.  *See* Fn. 1.

legal work again as they[5] had done before.  When they[6] packed
her room they[7] took what they[8] wanted.

The plaintiff was subsequently taken to the RHU.  When
she was in the RHU she refused to sign a property sheet because
not all of her property was there.  The plaintiff was released
from the RHU on March 17, 2008.  She was given two boxes and
two bags of property.  The plaintiff initially refused to sign
the inventory sheet but Officer Fould said that she had to.
The plaintiff signed the sheet but then asked Sergeant Winder
if she could erase her name because some items were not on the
sheet.  She told Sergeant Winder that she had filed a grievance
about the items and Sergeant Winder told her not to worry and
that since she had filed a grievance all that she was signing
for was what is there minus the items that were the subject of
the grievance.

---

5.   *See* Fn. 1.

6.   *See* Fn. 1.

7.   *See* Fn. 1.

8.   *See* Fn. 1.

When she unpacked her property she found another inmate's property with her property.  Also the plaintiff's transcripts, status sheets, rap sheets, lawyer letters, an appeal, a decision by Judge Abraham and all of her grievances were missing from her property.  Everything that she needed to be released was missing.

The plaintiff alleges that they[9] will say that she is schizophrenic, paranoid and that she has dementia.  The plaintiff has been housed in a single cell for twenty years without a reason.  She has not had a roommate and she has been isolated, humiliated, denigrated and many times made the subject of ridicule.  She alleges that this was initially because of an "understandable misdiagnosis," but that the misdiagnosis was turned into a weapon to use against her if she dared to challenge wrongdoing at the institution.

The plaintiff was put in the psychiatric observation cell to create a record of  mental illness.  It would have been

---

9.  *See* Fn. 1.

hard to blame an honor inmate with all of the things that they[10]

wanted to blame the plaintiff for so they[11] created a record

indicating that the plaintiff is mentally ill.  The plaintiff

has been misdiagnosed with dementia and has been given Aricept,

a medication for Alzheimers disease.  A side effect of Aricept

is aggressiveness.  The plaintiff was diagnosed with dementia

without any testing except an x-ray which indicated a "vascular

malformation rea to posterior parietals."  The plaintiff

contends that this is not proof of dementia and that the x-ray

is that of another woman.

The plaintiff has cancer.

The plaintiff claims that the defendants violated her

rights under the Fourth, Sixth, Eighth and Fourteenth

Amendments.  As relief, the plaintiff seeks monetary damages

and injunctive relief.

II.  Pleading Standards.

---

10.  *See* Fn. 1.

11.  *See* Fn. 1.

14

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Discussion.

We review the amended complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**- The court shall review, before docketing, if feasible or, in any

event, as soon as practicable after docketing,
a complaint in a civil action in which a
prisoner seeks redress from a governmental
entity or officer or employee of a
governmental entity.

**(b) Grounds for dismissal**.- On review,
the court shall identify cognizable claims or
dismiss the complaint, or any portion of the
complaint, if the complaint-

(1) is frivolous, malicious, or fails to
state a claim upon which relief may be
granted; or

(2) seeks monetary relief from a
defendant who is immune from such relief.

This is a 42 U.S.C. § 1983 action. "Section 1983
imposes civil liability upon any person who, acting under the
color of state law, deprives another individual of any rights,
privileges, or immunities secured by the Constitution or laws
of the United States." *Shuman v. Penn Manor School Dist.,* 422
F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create
any new substantive rights but instead provides a remedy for
the violation of a federal constitutional or statutory right."
*Id.* "To state a claim under § 1983, a plaintiff 'must allege
both a deprivation of a federally protected right and that this
deprivation was committed by one acting under color of state
law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d
Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.
1997)).

17

A.  The Department of Corrections.


The plaintiff's claims against the Pennsylvania

Department of Corrections are barred by the Eleventh Amendment.


The Eleventh Amendment provides:

> The Judicial power of the United States shall
> not be construed to extend to any suit in law
> or equity, commenced or prosecuted against one
> of the United States by Citizens of another
> State, or by Citizens or Subjects of any
> Foreign State.

Although its text appears to restrict only the Article

III diversity jurisdiction of the federal courts, the Eleventh

Amendment has been interpreted "to stand not so much for what

it says, but for the presupposition . . . which it confirms."

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54

(1996)(quoting *Blatchford v. Native Village of Noatak*, 501 U.S.

775, 779 (1991)).  That presupposition is that each state is a

sovereign entity in our federal system and that it is inherent

in the nature of sovereignty that a sovereign is not amenable

to suit unless it consents. *Id.* Thus, "the Constitution does
not provide for federal jurisdiction over suits against
nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528
U.S. 62, 73 (2000).

In the absence of consent, a suit in federal court
against the state or one of its agencies is barred by the
Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782
(1978)(per curiam). However, a state may waive its Eleventh
Amendment immunity by consenting to suit and Congress may
abrogate States' Eleventh Amendment immunity when it
unequivocally intends to do so and it acts pursuant to a valid
grant of constitutional authority. *College Savings Bank v.
Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666,
670 (1999).

The Department of Corrections is a state agency. *See* 71
P.S. § 61. The Commonwealth of Pennsylvania has not waived its
Eleventh Amendment immunity. *See* 42 P.C.S.A. § 8521(b). 42
U.S.C. § 1983 does not override a state's Eleventh Amendment
immunity. *Quern v. Jordan*, 440 U.S. 332 (1979). Accordingly,

the plaintiff's claims against the Department of Corrections
are barred by the Eleventh Amendment.

      B.   Defendants Lamas, Edwards and Peters.

      The plaintiff has sued defendants Beard, Moore-Smeal
and Shepler in their official capacities only.  She has sued
defendants Chamberlain, Lamas, Edwards, Shiptoski, Peters,
Seybert, Garrison and Woodring in both their official and
individual capacities.

      Although the plaintiff has sued defendants Lamas,
Edwards and Peters in their individual capacities, apart from
identifying these defendants the amended complaint contains no
allegations regarding these defendants.

      "Liability may not be imposed under § 1983 on the
principle of *respondeat superior*." *Hetzel v. Swartz*, 909
F.Supp. 261, 264 (M.D. Pa. 1995).  "[E]ach Government official,
his or her title notwithstanding, is only liable for his or her
own misconduct." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949
(2009).  Liability under 42 U.S.C. § 1983 may only be based

upon a defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). The complaint must contain averments of the involvement of the defendants in the conduct which caused a violation of the plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Because the amended complaint fails to contain allegations of personal involvement on the part of defendants Lamas, Edwards and Peters in conduct allegedly in violation of the plaintiff's rights, the amended complaint fails to state a claim upon which relief may be granted against defendants Lamas, Edwards and Peters in their individual capacities.

C. Defendant Garrison.

The plaintiff alleges that defendant Garrison was responsible for sending her to the psychiatric observation cell, that she was placed in the psychiatric observation cell so that her legal materials could be stolen, that defendant Garrison searched her cell and that her legal materials were

missing from her cell when she returned to her cell after being in the psychiatric observation cell.

We construe the amended complaint as stating a claim of a violation of the plaintiff's Fourth Amendment rights against defendant Garrison based on the search of her cell. However, the Fourth Amendment's proscription against unreasonable searches does not apply within the confines of the prison cell. *Hudson v. Palmer,* 468 U.S. 517, 526 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* Accordingly, the amended complaint fails to state a Fourth Amendment claim upon which relief may be granted against defendant Garrison.

In the amended complaint, the plaintiff cites to the Sixth Amendment. The Sixth Amendment, however, by its terms applies only in criminal prosecutions. Accordingly, the amended complaint fails to state a Sixth Amendment claim upon which relief may be granted against defendant Garrison or any of the other defendants.

We also construe the amended complaint to state a claim of a violation by defendant Garrison of the due process rights of the plaintiff based upon the alleged theft of the plaintiff's property from her cell.  Although she does not allege that defendant Garrison took her property, she does allege that defendant Garrison searched her cell.  A reasonable inference from the plaintiff's allegations is that she is claiming that defendant Garrison took her property.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), a state prisoner claimed that prison officials had negligently deprived him of his property without due process of law.  The Court concluded that the alleged loss even though negligently caused amounted to a deprivation of property under the Fourteenth Amendment's due process clause. *Id.* at 536-37.[12]  The Court

_____

12. *Parratt* was subsequently overruled to the extent that it stated that a mere lack of due care by a state official may deprive an individual of property under the Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  In *Daniels,* the Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328.

held, however, that random, unauthorized, negligent deprivations by state officials of a prisoner's personal property are not actionable under the due process clause where there exists a remedy under state law for reimbursement. *Id.* at 541-43. *Hudson v. Palmer*, 468 U.S. 517 (1984), extended this concept to include intentional unauthorized deprivations of property. The Court in *Hudson* reasoned:

> While *Parratt* is necessarily limited by its facts to negligent deprivations of property, it is evident . . . that its reasoning applies as well to intentional deprivations of property. The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when the deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicality' of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent.

*Id.* at 533. The Court in *Hudson* held that an unauthorized intentional deprivation of property does not violate the due process clause provided that adequate state post-deprivation remedies are available. *Id.* "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* (footnote omitted).

In the instant case, the plaintiff alleges that her legal materials were taken from her cell. The plaintiff does not allege that this was a taking pursuant to an established procedure. Thus, the reasoning of *Parratt* and *Hudson* is applicable and the material question is whether the plaintiff had an adequate postdeprivation remedy available for the loss of property. The Pennsylvania Department of Corrections has implemented a grievance system governed by Administrative Directive 804. A grievance program may provide an adequate post-deprivation remedy. *See Tillman v. Lebanon County*

*Correctional Facility,* 221 F.3d 410, 422 (3d Cir. 2000)(stating that "the plaintiff had an adequate postdeprivation remedy in the grievance program").  Because the plaintiff had an adequate postdeprivation remedy available to her through the grievance system, the complaint fails to state a due process property deprivation claim against defendant Garrison upon which relief may be granted.

Because some of the property allegedly taken from her cell was legal materials and because the plaintiff alleges that everything that she needed to get released was taken, we construe the amended complaint to state a claim of a denial of the plaintiff's right of access to the courts.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008).  There are two general categories of actionable claims of denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

The first category of actionable claims is a forward-looking claim. *Id.* The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.* The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category of actionable claims of denial of access to the courts is a backward-looking claim. *Id.* at 413-14. Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must allege an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.* Like any other element, the underlying cause of action "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. In the prison setting, actual injury is the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996).

The plaintiff alleges that transcripts and everything that she needed to get released were taken from her cell. The plaintiff, however, has not alleged facts from which it can reasonably be inferred that she has suffered an actual injury. The plaintiff has not alleged the nature of the claim or claims that she was pursuing or is seeking to pursue. She has not alleged facts from which it reasonably can be inferred that she had a nonfrivolous, arguable underlying claim that was blocked or lost by the taking of her property. Accordingly, the amended complaint fails to state a claim of a denial of access to the courts against defendant Garrison upon which relief may be granted.

We also construe the amended complaint as attempting to state an Eighth Amendment claim against defendant Garrison based upon her placement in the psychiatric observation cell.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*,

536 U.S. 730, 737 (2002).  Conditions which inflict needless
suffering, whether physical or mental, may constitute cruel and
unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275
(W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

Punishment is cruel and unusual only if it is
"unusually severe, if there is a strong probability that it is
inflicted arbitrarily, if it is substantially rejected by
contemporary society, and if there is no reason to believe it
serves any penal purpose more effectively than some less severe
punishment."  *Rhodes v. Robinson*, 612 F.2d 766, 774 (3d Cir.
1979) (quoting *Furman v. Georgia*, 408 U.S. 238, 282 (1972)
(Brennan, J., concurring)).

An Eighth Amendment claim gives rise to a two prong
analysis.  Eighth Amendment claims must satisfy both an
objective component (the deprivation must be sufficiently
serious) and a subjective component (the defendant must have
been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351,
359-60 (3d Cir. 1992).  As to the objective component, the
Eighth Amendment is violated only when an inmate is deprived of
"the minimal civilized measure of life's necessities." *Rhodes*

*v. Chapman*, 452 U.S. 337, 347 (1981). As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope, supra,* 536 U.S. at 738.

The plaintiff alleges facts from which it can reasonably be inferred that defendant Garrison was responsible for sending her to the infirmary where she was placed in the psychiatric observation cell. However, the plaintiff has not alleged facts from which it can reasonably be inferred that defendant Garrison was responsible for the conditions she was subjected to in the psychiatric observation cell or even that he was aware of those conditions. Accordingly, we conclude that the amended complaint fails to state an Eighth Amendment

claim against defendant Garrison upon which relief may be granted.

D.   Defendant Shiptoski.

The plaintiff alleges that defendant Shiptoski was responsible for placing her in the psychiatric observation cell, that defendant Shiptoski deliberately overmedicated her, that defendant Shiptoski did not have authority to place her in the psychiatric observation cell or prescribe her medication, that while in the psychiatric observation cell she was medicated to the point that she was confused and dizzy, that as a result of being overmedicated and receiving a defective smock her naked body was exposed to the staff and camera and that she fell over the bed and cut her leg, that she was not allowed to have writing materials, hygiene materials or legal materials in the psychiatric observation cell, that she was placed in the psychiatric observation cell so that her legal materials could be stolen, and that her legal materials were missing from her cell when she returned to her cell after being in the psychiatric observation cell.

For the same reasons discussed above in connection with defendant Garrison, we conclude that the amended complaint fails to state a Fourth Amendment claim, a Sixth Amendment claim, a due process property claim or a claim of denial of access to the courts claim against defendant Shiptoski upon which relief may be granted.  However, unlike in connection with defendant Garrison, we conclude that the amended complaint states an Eighth Amendment claim against defendant Shiptoski upon which relief may be granted.  She alleges that defendant Shiptoski deliberately overmedicated her and she alleges facts from which it can reasonably be inferred that defendant Shiptoski was aware of the conditions the plaintiff was subject to in the Psychiatric observation cell.  We conclude that the plaintiff has alleged facts from which a reasonable finder of fact could conclude that defendant Shiptoski was deliberately indifferent to the plaintiff's serious medical needs by deliberately overmedicating her and placing her in the psychiatric observation cell.

E.  Defendant Seybert.

33

The plaintiff alleges that defendant Seybert came to the psychiatric observation cell and asked the plaintiff to take the medications prescribed by defendant Shiptoski and that she told the plaintiff that if she did not take the medications she would take steps to commit her. The plaintiff, however, was not involuntarily medicated and she subsequently agreed to take the same medication and dose that she had been taking before being placed in the psychiatric observation cell. We conclude that the amended complaint does not state a claim against defendant Seybert upon which relief may be granted.

F.   Defendant Chamberlain.

The plaintiff alleges that she attempted to find out from defendant Chamberlain the reason that she was placed in the psychiatric observation cell. The plaintiff disagreed with the reasons given by defendant Chamberlain. That, however, is not enough to state a claim upon which relief may be granted against defendant Chamberlain.

The plaintiff also alleges that she asked defendant Chamberlain to fire Officer Manning who the plaintiff alleges

34

was retaliating against her because she complained about his conduct.

A prisoner claiming that prison officials have retaliated against her for exercising her constitutional rights must prove that: 1) the conduct in which she was engaged was constitutionally protected; 2) she suffered "adverse action" at the hands of prison officials; and 3) her constitutionally protected conduct was a substantial or motivating factor in the decision of the defendants. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002). "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001)).

The plaintiff alleges that defendant Manning told another officer to write on the plaintiff's card that she failed to volunteer. The plaintiff, however, does not allege that any adverse action was taken against her as a result. The plaintiff also alleges that she was being harassed by Officer

Manning but she does not allege what harassing actions he took against her. Moreover, when the plaintiff stated during the meeting with defendant Chamberlain and Patti Stover that she wanted Officer Manning fired, Stover said that they could get a separation order and send her to Cambridge Springs. The plaintiff said she would fight that. Thus, the plaintiff rejected the offer to separate her from Officer Manning by transferring her. We conclude that the plaintiff has failed to allege facts from which it reasonably can be inferred that defendant Chamberlain violated her rights by not firing Officer Manning.

G. Defendant Woodring.

The plaintiff alleges that she told defendant Woodring, her psychologist, that Officer Manning was harassing her since she wrote him up. The plaintiff, however, has not alleged how defendant Woodring responded. Moreover, as set forth above, the plaintiff has not alleged how defendant Manning was harassing her other than that on one occasion Officer Manning told another officer to write on the plaintiff's card that the plaintiff had not volunteered. We conclude that the amended

complaint fails to state a claim against defendant Woodring upon which relief may be granted.

H.  Official Capacities Claims.

The plaintiff has sued the defendants other than the Department of Corrections in their official capacities.

Claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).  However, in *Ex Parte Young*, 209 U.S. 123 (1908), "the Court held that a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997)(O'Connor, J., concurring).  The *Ex Parte Young* exception to Eleventh Amendment immunity is limited to claims involving prospective relief. *See Edelman v. Jordan*, 415 U.S. 651 (1974). "The principle which emerges from *Young* and its progeny is that

a state official sued in his official capacity for prospective
injunctive relief is a person within section 1983, and the
Eleventh Amendment does not bar such a suit." *Hindes v.
F.D.I.C.*, 137 F.3d 148, 165 (3d Cir. 1998).

Thus, any claims for monetary damages against the
defendants in their official capacities are barred by the
Eleventh Amendment.  Claims for prospective injunctive relief
against the defendants in their officials capacities are not
barred by the Eleventh Amendment.  However, as set forth above
the only claim stated in the amended complaint is an Eighth
Amendment claim based on defendant Shiptoski's confinement of
the plaintiff in the Psychiatric observation cell in 2007 for a
limited period of time.  Thus, although the plaintiff requests
an independent psychological evaluation and other unspecified
injunctive relief in the amended complaint, there is no basis
to conclude that given the one claim upon which relief may be
granted that is stated in the amended complaint that the
plaintiff is entitled to prospective injunctive relief.
Accordingly, we will also recommend that the claims against the
defendants in their official capacities be dismissed.

IV.  Leave to Amend.

Before dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3rd Cir. 2002).  In the instant case, we already granted the plaintiff leave to file an amended complaint and the plaintiff filed an amended complaint. Further leave to amend would be futile.

V. Recommendations.

Based on the foregoing, it is recommended that all of the claims in the amended complaint as to all of the defendants be dismissed, except for the Eighth Amendment claim against

defendant Shiptoski.  It is recommended that the case be
remanded to the undersigned for further proceedings.[13]


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge



Dated:  October 28, 2010.

---

13.  By a separate order, we have ordered that the amended
complaint be served on defendant Shiptoski.  We note that a number
of motions are pending in this case.  Upon remand, the undersigned
will address those motions as appropriate.